**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

OSHAE SCOTT,

Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal entity; Det. BAHIR MUSTAFA (Shield No. 4533) and New York City Police Officers "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc. (whose identity are unknown but who are known to be personnel of the New York City Police Department), all of whom are sued individually and in their official capacities.

Defendants.

---------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL**

Plaintiff OSHAE SCOTT, by his attorneys, Beldock Levine & Hoffman LLP, as and for his complaint against the defendants named above alleges as follows:

## PRELIMINARY STATEMENT

1. This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State law for injuries PLAINTIFF sustained from the unconstitutional conduct of defendants THE CITY OF NEW YORK and New York City Police Department police officers Det. BAHIR MUSTAFA and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc.

2. On January 14, 2015, PLAINTIFF and his friends were preparing to leave a Chinese restaurant they had just eaten at when they were approached by several police officers who, without reasonable suspicion or any other legal justification, stopped and searched them. Although there was no legal basis for the search and even though nothing illegal was found on PLAINTIFF and his friends, the police officers arrested them and falsely charged them with

Criminal Possession of a Controlled Substance and Criminal Sale of a Controlled Substance. The baseless charges against PLAINTIFF and his friends were eventually dismissed. As a result of defendants' unlawful actions, PLAINTIFF was held in custody for approximately thirty-one (31) hours and forced to return to court three times.

3. PLAINTIFF seeks (i) compensatory damages for loss of liberty, physical injury, psychological and emotional distress, and other injuries caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; (iii) costs and attorneys' fees; (iv) and such other and further relief as this Court deems equitable and just.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of PLAINTIFF's constitutional and civil rights.

5. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state constitutional or common law claims that are so related to the federal claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

6. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to PLAINTIFF's claims took place.

**JURY DEMAND**

7. PLAINTIFF demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

**THE PARTIES**

8. Plaintiff OSHAE SCOTT ("PLAINTIFF") is an African-American citizen of the United States, who is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

9. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and does maintain the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

10. Defendant Detective BAHIR MUSTAFA ("MUSTAFA") (Shield No. 4533) and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc., ("DOES") are NYPD police officers who unlawfully detained, assaulted and battered, frisked, and arrested PLAINTIFF without suspicion of any illegal activity, lodged false criminal charges against him, and caused him to be maliciously prosecuted.

11. At all times relevant herein, defendants MUSTAFA and DOES were NYPD Police Officers. Upon information and belief, defendants MUSTAFA and DOES are still NYPD Police Officers.

12. At all times relevant herein, defendant police officers MUSTAFA and DOES acted under color of state law in the course and scope of their duties and/or functions as agents,

employees, and/or officers of the CITY and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the CITY and/or the NYPD.

13. At all times relevant herein, defendant police officers MUSTAFA and DOES violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, of which reasonable police officers in their circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

14. PLAINTIFF served a Notice of Claim upon the CITY on March 4, 2015, within ninety (90) days of the events giving rise to his claims.

15. More than thirty (30) days have elapsed since PLAINTIFF served his Notice of Claim and the CITY has not offered adjustment or payment thereof.

16. This action is filed within one year of the events giving rise to PLAINTIFF's claims.

## STATEMENT OF FACTS

17. On the afternoon of January 15, 2015, PLAINTIFF was walking home on West 165th Street, Bronx, New York, after playing basketball at the Mullaly Community Center, where he is a basketball coach.

18. At approximately 165th Street and Woodycrest Avenue, PLAINTIFF came upon four of his friends who were with another person whom PLAINTIFF did not know, but recognized from the neighborhood ("the acquaintance").

19. PLAINTIFF greeted his friends and the acquaintance, and they decided to get something to eat together.

20. They went to the Dong King Chinese restaurant at 80 West 165th street where they ordered and ate food.

21. After approximately forty-five minutes, PLAINTIFF, his friends, and the acquaintance had finished eating and were preparing to leave the restaurant.

22. PLAINTIFF and his friends were still getting ready to leave when the acquaintance exited the restaurant and began running up the street.

23. PLAINTIFF did not know why the acquaintance left the restaurant ahead of them and ran away.

24. Immediately after the acquaintance exited the restaurant and ran, an unmarked police van pulled up in front of the restaurant.

25. Three police officers exited the van and began running in the same direction the acquaintance had run.

26. Two other police officers exited the van, entered the restaurant, and approached PLAINTIFF and his friends.

27. The police officers told PLAINTIFF and his friends to stay where they were.

28. One of the police officers said, in a joking manner, that he was "too fat" to be running after people.

29. The police officers then searched PLAINTIFF and his friends.

30. Without asking for or obtaining permission from PLAINTIFF, one of the police officers took PLAINTIFF's backpack and began searching through it.

31. Although the police officers did not find any evidence of illegal activity on PLAINTIFF or his friends, they caused PLAINTIFF and his friends to remain in the restaurant.

32. PLAINTIFF was concerned about the passage of time because his little brother would be returning home from school in a short while and PLAINTIFF was supposed to be there to let him in.

33. One of the police officers told PLAINTIFF and his friends, in sum and substance, not to worry because they did not find anything on them and would let them leave in a little while.

34. The three police officers who had run after the acquaintance eventually entered the restaurant with an older Hispanic male who appeared to be homeless.

35. PLAINTIFF did not know who the Hispanic male in police custody was and, other than possibly having seen him when PLAINTIFF and his friends entered the restaurant, had never seen him before.

36. One of the police officers addressed PLAINTIFF and his friends and said, in sum and substance while laughing, “Since we couldn’t find him, we’re taking you in.”

37. PLAINTIFF thought the police officer was not serious when he said this, because he said it in a joking manner.

38. The police officers then searched PLAINTIFF and his friends and their belongings a second time, as well as the surrounding area.

39. Although the police officers did not find any evidence of illegal activity, they continued to detain PLAINTIFF and his friends.

40. The police officers took down PLAINTIFF’s and his friends’ pedigree information, and took pictures of them using a cell phone camera.

41. Upon information and belief, the police officers had the names of PLAINTIFF and his friends checked for outstanding warrants.

42. Upon information and belief, the police officers learned that PLAINTIFF and his friends did not have any outstanding warrants.

43. One of the police officers said, in sum and substance, “We got nothing, let them go.”

44. PLAINTIFF and his friends started to leave the restaurant.

45. As they were doing this, one of the police officers asked PLAINTIFF and his friends, in sum and substance, what they thought they were doing and told them that they could not leave.

46. The police officer told PLAINTIFF and his friends that they were being placed under arrest.

47. PLAINTIFF and his friends asked what they were being arrested for.

48. One of the police officers responded by telling PLAINTIFF and his friends, in sum and substance, to “shut up” and put their hands behind their backs.

49. PLAINTIFF and his friends were placed in handcuffs.

50. One of PLAINTIFF’s friends began crying and complained that the police officers were only arresting them because they did not catch the acquaintance and that what they were doing was not fair.

51. The police officers responded to PLAINTIFF’s friend by putting his legs in shackles.

52. By this time, a large number of people had gathered on the street to watch what was going on between the police and PLAINTIFF and his friends.

53. Several people also watched from the windows of the surrounding buildings.

54. PLAINTIFF was upset because he recognized several children who he coached playing basketball and their parents watching him be arrested by the police.

55. PLAINTIFF, his friends, and the Hispanic male were all placed in a police van in handcuffs.

56. The police officers drove PLAINTIFF and his friends to 166th Street and Anderson Avenue where they performed another arrest and placed another arrestee in the van.

57. The police officers then drove PLAINTIFF and his friends to the east side of the Bronx.

58. The police officers then parked the van and left PLAINTIFF and his friends handcuffed inside the van for approximately three hours.

59. PLAINTIFF began to suffer extreme pain in his shoulder from being handcuffed and confined in a crowded van for so long.

60. One of PLAINTIFF's friends asked the police officers to be taken to the precinct because he was asthmatic and was having trouble breathing.

61. The police officers responded by telling PLAINTIFF's friend to shut up.

62. PLAINTIFF offered to switch seats with his friend because he thought he might be able to breathe easier if he was next to a window.

63. The police officers responded by telling PLAINTIFF that if he did not shut up, they were going to mace the entire van.

64. Eventually, the police officers resumed driving the van.

65. After having been handcuffed and confined inside the van for approximately five hours, the police officers finally brought PLAINTIFF and his friends to the 44th Precinct.

66. At the 44th Precinct, PLAINTIFF and his friends were again searched.

67. PLAINTIFF asked police officers if he could make a phone call.

68. PLAINTIFF wanted to let his mother know what had happened to him and where he was.

69. PLAINTIFF was never given the opportunity to make any telephone calls at the 44th Precinct

70. PLAINTIFF and his friends were eventually placed in a holding cell.

71. While confined in the holding cell, PLAINTIFF asked a police officer what they were being charged with.

72. The police officer responded, in sum and substance, that PLAINTIFF and his friends had been acting as lookouts for a drug sale.

73. PLAINTIFF was later taken from the holding cell and brought to a room full of police officers both in uniform and plain clothes.

74. Without reading him his rights, police officers began questioning PLAINTIFF.

75. PLAINTIFF was asked for the identity of the person who had run after leaving the Dong King restaurant.

76. PLAINTIFF told the police officers that he recognized the person from his neighborhood, but that he did not know his name or know him personally.

77. Police officers told PLAINTIFF he was lying.

78. PLAINTIFF was then asked about where he lived.

79. PLAINTIFF told the police officers that he lived in the Row Park Towers.

80. The police officers then started asking PLAINTIFF about the Row Park Towers.

81. PLAINTIFF asked the police officers why they were asking him about things that had nothing to do with their purported reason for arresting him.

82. The police officers then started asking plaintiff about his mother and his brother.

83. PLAINTIFF again asked why they were asking him about things that had nothing to do with their purported reason for arresting him and requested to be taken back to the holding cell.

84. PLAINTIFF was returned to his holding cell.

85. PLAINTIFF was eventually taken to Bronx Central Booking.

86. At Bronx Central Booking, PLAINTIFF was again searched.

87. PLAINTIFF eventually saw a lawyer at Bronx Central Booking and was brought before a judge for arraignment.

88. At arraignment, PLAINTIFF was charged with Criminal Sale of a Controlled Substance and Criminal Possession of a Controlled Substance (NYPL 220.39 and 220.16).

89. The charges were allegedly based on information undercover police officers Doe 1 and Doe 2 allegedly provided to Detective MUSTAFA.

90. Detective MUSTAFA claimed that the undercover police officers told him that they had engaged in a drug related conversation with the older Hispanic male, gave the Hispanic male some money, and that the Hispanic male went into the Chinese restaurant where he exchanged the money for "small objects" from an "unapprehended male" who was with PLAINTIFF and his friends.

91. It is then claimed that the Hispanic male gave the "small objects," that allegedly appeared to be crack cocaine, to one of the undercover officers.

92. Upon information and belief, the charges against PLAINTIFF were maliciously lodged by the individual defendants, were entirely fabricated and without any legal justification.

93. PLAINTIFF pled "not guilty" at arraignment.

94. PLAINTIFF and his friends were all released on their own recognizance at approximately 11:30 p.m. on January 15, 2015, after having spent approximately thirty-one (31) hours in custody.

95. After being arraigned, PLAINTIFF was compelled to return to Bronx County Criminal Court three times before all of the charges against him were dismissed and sealed on June 18, 2015, for failure to prosecute.

96. At all times relevant herein, the individual defendant police officers were engaged in a joint venture. The individual police officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

97. Defendants' conduct caused PLAINTIFF to suffer loss of liberty, physical injury, emotional and psychological pain, embarrassment, humiliation, harm to his reputation, and deprived him of his constitutional rights

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Rights**
**(Individual Defendants)**

98. PLAINTIFF realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

99. In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive PLAINTIFF of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

a. freedom from unreasonable search and seizure of his person and property;

b. freedom from arrest without probable cause;

c. freedom from use of excessive force;

d. freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, of which wrongful detention PLAINTIFF was aware and did not consent;

e. freedom from the lodging of false charges against him by police officers and prosecutors, including, on information and belief, by some or all of the individual defendants;

f. freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFF's favor; and

g. freedom from deprivation of liberty without due process of law.

100. In committing the acts and omissions complained of herein, defendants MUSTAFA and DOES breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

101. As a direct and proximate result of defendant NYPD police officers MUSTAFA's and DOES' deprivation of PLAINTIFF's constitutional rights, PLAINTIFF suffered the injuries and damages set forth above.

102. The unlawful conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

**SECOND CAUSE OF ACTION**
***Monell* Claim**
**(City of New York)**

103. PLAINTIFF realleges and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

104. The unconstitutional conduct of NYPD police officers MUSTAFA and DOES was directly and proximately caused by policies, practices, and or customs devised, implemented, enforced, condoned, encouraged, and sanctioned by the CITY.

105. Upon information and belief, the unlawful types of arrest and prosecution seen in this case are regularly recurring in the Bronx, and particularly involving Bronx Borough Narcotics officers, which circumstances are known, or should be known, to NYPD supervisors and commanders.

106. These customs, policies and practices result from inadequate training of police officers, improper written policies and training protocols of the NYPD, insufficient supervision of NYPD police officers, and a failure to discipline officers who have conducted unlawful stops and/or arrests.

107. The NYPD's unlawful customs, policies, and practices have caused a large number of Bronx residents, including PLAINTIFF, to be regularly arrested and charged without any reasonable suspicion or probable cause to believe they had engaged in criminal conduct.

108. At all relevant times, the CITY, acting through the NYPD and the individual defendants, has implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of stopping and arresting people in the Bronx without the reasonable, articulable suspicion of criminality required by the Fourth Amendment, and, in particular, has displayed deliberate indifference toward this widespread practice of unconstitutional stops and arrests in the Bronx.

109. By displaying deliberate indifference toward a widespread practice of unconstitutional stops and arrests in the Bronx and by the above-mentioned failures, the CITY

has caused PLAINTIFF to be subjected to the violations of his constitutional rights alleged herein.

110. As a result of the foregoing, PLAINTIFF suffered the injuries and damages set forth above.

**THIRD CAUSE OF ACTION**
**Violations of the New York State Constitution**

111. PLAINTIFF realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

112. Defendants' conduct breached the protections guaranteed to PLAINTIFF by the New York State Constitution including, but not limited to, Article I, Secs. 6 and 12, and including the following rights:

a. freedom from unreasonable search and seizure of his person and property;

b. freedom from arrest without probable cause;

c. freedom from use of excessive force;

d. freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, of which wrongful detention PLAINTIFF was aware and did not consent;

e. freedom from the lodging of false charges against him by police officers and prosecutors, including on information and belief, by some or all of the individual defendants;

f. freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFF's favor; and

g. freedom from deprivation of liberty without due process of law.

113. The deprivation of PLAINTIFF's rights under the New York State Constitution resulted in the injuries and damages set forth above.

**FOURTH CAUSE OF ACTION**
**Assault and Battery**

114. PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

115. Defendant NYPD police officers MUSTAFA and DOES, without just cause, wilfully and maliciously used physical force against PLAINTIFF causing him injury.

116. Defendant NYPD police officers MUSTAFA and DOES committed the foregoing acts intentionally, wilfully, and with malicious disregard for PLAINTIFF's rights, and are therefore liable for punitive damages.

**FIFTH CAUSE OF ACTION**
**False Imprisonment**

117. PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

118. Defendant NYPD police officers MUSTAFA and DOES, through the foregoing acts, caused PLAINTIFF to be wrongfully detained without good faith, reasonable suspicion, or legal justification, of which detention PLAINTIFF was aware and to which he did not consent.

119. Defendant NYPD police officers MUSTAFA and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFF's rights and are therefore liable for punitive damages.

**SIXTH CAUSE OF ACTION**
**Malicious Prosecution**

120. PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

121. Defendant NYPD police officers MUSTAFA and DOES, through the foregoing acts, maliciously commenced a criminal proceeding against PLAINTIFF, which ended in his favor, without probable cause to believe PLAINTIFF was guilty of the crimes charged or any crimes.

122. Defendant NYPD police officers MUSTAFA and DOES committed the foregoing acts intentionally, willfully, and maliciously, and are therefore liable for punitive damages.

**SEVENTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**

123. PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

124. Defendant NYPD police officers MUSTAFA and DOES, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused PLAINTIFF to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

125. Defendant NYPD police officers MUSTAFA and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFF's rights and are therefore liable for punitive damages.

**EIGTH CAUSE OF ACTION**
**Negligent Hiring, Training, Discipline, and Retention of Employment Services**

126. PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

127. The CITY, through the NYPD, owed a duty of care to PLAINTIFF to prevent the physical and mental abuse sustained by PLAINTIFF. Under the same or similar circumstances, a

reasonable, prudent, and careful person would have anticipated that an injury to PLAINTIFF or to those in a like situation would probably result in this conduct.

128. Upon information and belief, NYPD police officers MUSTAFA and DOES were unfit and incompetent for their position as police officers.

129. Upon information and belief, the CITY knew or should have known through the exercise of reasonable diligence that NYPD police officers MUSTAFA and DOES were likely to wrongfully cause harm to civilians they encountered.

130. Upon information and belief, the CITY's negligence in hiring, training, disciplining, and retaining NYPD police officers MUSTAFA and DOES proximately caused PLAINTIFF's injuries set forth above.

## NINTH CAUSE OF ACTION
***Respondeat Superior***

131. PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

132. At all relevant times, defendant NYPD police officers MUSTAFA and DOES were employees of the City and were acting within the scope of their employment.

133. The CITY is therefore vicariously liable under the common law doctrine of *respondeat superior* for the actions of defendant NYPD police officers MUSTAFA and DOES set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, PLAINTIFF demands the following relief against the defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages from defendant NYPD police officers MUSTAFA and DOES to the extent allowable by law;

(c) attorney's fees;

(d) the costs and disbursements of this action;

(e) interest; and

(f) such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 9, 2015

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 2600
New York, New York 10016
(212) 490-0400

/s/Marc A. Cannan
Myron Beldock (MB4076)
Marc A. Cannan (MC0513)

*Attorneys for Plaintiff Oshae Scott*